12243

SOUTHERN COTTON OIL CO. v. THE SCHAFER CO.

(138 S. E., 882)

1. APPEAL AND ERROR—IN ACTION ON NOTES, ADMITTING SUMMONS AND COMPLAINT IN ANOTHER ACTION BY DEFENDANTS HELD NOT PREJUDICIAL, NOTWITHSTANDING PLAINTIFF'S FAILURE TO PRODUCE SUCH DOCUMENTS ON NOTICE.—In action on notes involving particularly issue whether notes of third person, payable to defendant, secured by mortgage and previously transferred to plaintiffs, had been sold outright or merely assigned as collateral security, admission in evidence of original summons and complaint in another action by defendants against maker of note so transferred as bearing on ownership of note at time of such suit *held* not prejudicial to defendants, notwithstanding plaintiff's failure to produce such summons and complaint on notice before trial to do so, such notice being defective.

2. TRIAL—RULES OF EVIDENCE SHOULD BE CONSTRUED WITH OBJECT OF GETTING AT TRUTH OF CASE AND SECURING JUSTICE.—All rules of

evidence should be construed with the object of getting at the truth of a case and in the interest of securing justice.

.3. EVIDENCE—NOTICE BEFORE TRIAL TO PRODUCE SUMMONS AND COMPLAINT IN ANOTHER ACTION HELD INSUFFICIENT.—Notice to produce on trial summons and complaint "in the case of Southern Cotton Oil Company, plaintiff, against D. E. B., defendant," etc., *held* insufficient to require production of summons and complaint, in an action by a plaintiff other than that named.

4. APPEAL AND ERROR—SUFFICIENCY OF NOTICE TO PRODUCE WRITTEN INSTRUMENT IS QUESTION FOR TRIAL COURT, WHOSE DETERMINATION WILL NOT GENERALLY BE DISTURBED.—The sufficiency of notice to produce a written instrument is a preliminary question of fact for trial Court, whose determination will not generally be disturbed on appeal, except in plain case of injury through improper exercise of discretion.

Before FEATHERSTONE, J., Dillon.    Affirmed.

Action by the Southern Cotton Oil Company against the Schafer Company and others.    Judgment for plaintiff, and defendants appeal.

*Mr. Joe P. Lane,* for appellants, cites: *After notice to produce a document and failure to produce same and secondary evidence has been introduced to prove the document, said document cannot then be introduced:* 43 S. C., 403; Jones on Ev. (2nd Ed.), 222; 22 C. J., 1067, 1068, Par. 1378. *Sufficient notice to produce:* Jones on Ev. (2nd Ed.), Par. 220; 22 C. J., 1063.

*Messrs. Gibson & Muller,* for respondents, cite: *Cases distinguished:* 43 S. C., 403.

August 2, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

Plaintiff sued the defendants in the Court of Common Pleas for Dillon County on two promissory notes, which were given in settlement of a past-due account for fertilizers.

Admitting the execution of the notes sued on, the de-

fendants in their answer set up a counterclaim, growing out of the following matters, briefly stated: That in March, 1922, they were indebted to the plaintiff by the notes sued on; that they desired to purchase fertilizers for 1922; that then an agreement was made by plaintiff and defendants that the latter would assign to plaintiff certain notes of D. E. Britt to the defendants, the principal amounts of which aggregated $1,500.00, and which were secured by a real estate mortgage; that plaintiff agreed it would immediately credit the notes it held against the defendants with the sum of $1,000.00, and for the remaining $500.00 would furnish defendants with fertilizers of a certain grade and quantity; that the plaintiff collected the full amount of the Britt mortgage debt, but refused to properly credit the $1,000.00 on the notes of the defendants and refused to furnish them with fertilizers, as it agreed to do, to the defendants' damage in the sum of $2,500.00.

Plaintiff, by reply, denied the counterclaim.

The trial was before his Honor, Judge C. C. Featherstone, and resulted in a verdict in favor of the plaintiff "for the sum of approrimately $1,700.00," as stated in the transcript.

In their appeal from the judgment below, the defendants make two exceptions, both of which relate to the same matter. That was the admission in evidence on the part of the plaintiff, in reply, of the original summons and complaint in another action, entitled "A. Schafer and S. I. Schafer, Plaintiffs, v. D. E. Britt, Defendants," which was an action also instituted by Messrs. Gibson & Muller, the attorneys for the plaintiff in this action, for the foreclosure of the mortgage given by Britt to the Schafers. The defendants objected to the introduction of the papers for the reason, as stated by their counsel at the time, as follows:

"On the ground that when Mr. Schafer was on the stand,

and before Mr. Schafer testified as to the contents of this proceeding, Mr. Lane demanded this summons and complaint under a notice to produce properly served in this case, and that the attorneys for plaintiff refused to produce said summons and complaint, and stated to him that there was no such summons and complaint in existence. That notice to produce served on plaintiff's counsel put the plaintiff on notice of the written instrument demanded and was sufficient notice to produce the paper now offered."

Attorney for defendants further stated:

"Under the rules of evidence, the original paper demanded by the notice to produce cannot now be introduced into evidence."

Counsel for plaintiff contended that no notice to produce the papers offered in evidence had been given; that the notice as given did not ask for the particular papers in question; and that they were admissible for the purpose of contradicting the testimony of the witness, S. I. Schafer.

The notice given by the defendants to the attorneys for the plaintiff was in the following language:

"You will hereby take notice that you are required to produce on the trial of this case summons and complaint in the case of Southern Cotton Oil Company, Plaintiff, v. D. E. Britt, Defendant, which was foreclosure of mortgage of D. E. Britt originally made to the Schafer Company.

"Take notice, further, that on your failure to produce the above-mentioned summons and complaint, then the defendants will offer in evidence secondary proof of the same."

The position of the appellants, substantially, in the argument here is this: That the main difference between the parties was whether the Britt papers were sold outright by the defendants to the plaintiff on the consideration that the defendants would be given immediate credit for $1,000

on their indebtedness to the plaintiff and receive $500 worth
of fertilizers, or, if the Britt papers were merely assigned
to the plaintiff as collateral security, with the agreement
that when collection was made defendants were then to re-
ceive credit of $1,000 and fertilizers to the amount of
$500; that the notice was sufficient to describe the papers
the defendants wished to be produced; that they were of
the impression that these papers would aid to establish one
of the theories of their defense; that the papers should
have been produced; that the defendants introduced second-
ary evidence to show that the summons and complaint were
in an action on the part of Southern Cotton Oil Company,
as plaintiff, against Britt, as defendant, for the foreclosure
of his mortgage, which was at least a circumstance to
show that the plaintiff here had at one time claimed owner-
ship of the Britt note and mortgage; and that failure of
plaintiff to produce the papers, under the notice given to
its attorneys, under the circumstances, ought to have pre-
cluded the introduction thereafter by the plaintiff.

As a matter of fact, the witness (S. I. Schafer) had not
testified positively or directly that he had seen a summons
and complaint in a suit of Southern Cotton Oil Company
against Britt, or that the papers he had seen were for fore-
closure of the Britt mortgage. Since, however, both par-
ties seem to concede that Schafer had so testified, and the
purpose of the plaintiff in offering the summons and com-
plaint in reply was to contradict the testimony of Schafer,
we think it only fair for us to consider the legal questions
involved as if the secondary evidence was as the parties
conceive it to have been.

Appellants cite one decision of this Court, that in *Powell
v. Pearlstine,* 43 S. C., 403; 21 S. E., 328, to sustain their
position. The syllabus of the holding there referred to is
this:

"After a party, called upon by proper notice to produce a paper in his possession, has refused to produce it, and the opposite party has introduced secondary proof of its contents, the party so refusing cannot be permitted to introduce secondary evidence as to its contents, nor to introduce the paper itself."

We have not been referred to any later decision which affirms, modifies, or overrules the holding in the cited case. We think, though, the rule announced there is a wise and salutary one. But it, and all other rules of evidence, should be construed with the object of getting at the truth of a case. When a constitutional or some substantial right of a party is directly affected, rules of evidence, made to safeguard that right, should be followed strictly. At some other times, however, and where technical rules tend to prevent a Court from the ascertainment of the truth of an issue before it, the rules of the class mentioned should be disregarded, and, certainly, construed in the interest of securing justice. The tendency now in the administration of justice is in that direction, we are glad to say. As proof that it is, the Appellate Courts of America are more and more leaving admission and rejection of evidence to the wise discretion of the trial Judges, who, on the immediate scenes of the contests, are in position to better judge as to the evidence which should be received and that which ought to be refused; and, who, if they are afterwards convinced that injustice may have resulted to any party by a ruling made, have the power, and generally the desire, to make correction of the error.

In *Powell v. Pearlstine,* the rule as to precluding the admission of papers, after notice to produce had been given, was applied for the purpose of preventing what appeared to the Court to be an attempt to recover on a mortgage tainted with fraud, and probably with forgery. There is no

such issue, or anything in any way akin thereto, in the case at bar.  The appellants' attorney frankly and very properly announced that he makes no charge of that nature, or one of any intent to keep back the truth.  He stands boldly upon a decision of this Court, as he conceives it to have been written, and urges that it should be applied in this cause.

In connection with the *Powell case,* the appellants refer us to general principles declared in *Corpus Juris,* as follows:

"A notice to produce documents should describe the desired papers with sufficient accuracy to enable the party notified to understand what writings are required, and a notice to produce certain documents described therein is not sufficient to warrant the introduction of secondary evidence of other documents than those mentioned in the notice.  It is not, however, necessary that the notice should describe the documents with perfect accuracy, but it is sufficient if so framed with regard to the subject-matter to which the documents relate, or otherwise, that the party notified cannot doubt what papers are meant." 22 C. J., 1063.

It is ably argued that the notice given conformed to the requirements announced, but we cannot agree thereto.  The situation as to the evidence presented and the notice to produce was this:  The summons and complaint produced for admission by the plaintiff were in an action of the Schafers against Britt.  Plaintiff was notified to produce the summons and complaint in an action of Southern Cotton Oil Company against Britt, papers which had never existed according to the record before us. It was just as if the notice had required the production of a deed from Jones to Smith when no such deed had ever been made; and thereafter the party noticed offered to produce a deed from Brown to Smith.

Conceding, however, for the moment in some degree the position of the appellants, that there was a question as to the sufficiency of the notice given to the attorneys for the plaintiff, we are still met with another principle, already slightly adverted to, and it is approved in the same authority, last pointed to by the appellants. That principle is this:

"The sufficiency of a notice to produce a written instrument is a premliminary question of fact for the trial Court, whose determination will generally not be disturbed on appeal, except in a plain instance of injury through an improper exercise of discretion." 22 C. J., 1064.

A most careful examination of the record in this cause fails to disclose that the appellants suffered any "injury through an improper exercise of discretion" on the part of the trial Judge, even if it be admitted that there was such "improper exercise of that discretion," which we are not prepared to concede.

It is the judgment of this Court that the exceptions be overruled, and that the judgment of the lower Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE COTHRAN (concurring) : The action is upon two notes executed and delivered by the defendants to the plaintiff, on April 27, 1921, in settlement of a past-due debt for fertilizers furnished in 1920. (1) A note for $971.79, payable September 15, 1921, with 8 per cent. interest after maturity and 10 per cent. attorney's fees, upon which there is a credit of $653.57, as of May 11, 1922, leaving a claimed balance of $———, with interest at 8 per cent. from May 11, 1922, with 10 per cent. attorney's fees. (2) A note for $977.16, payable October 15, 1921,

with similar interest and attorney's fees, upon which there are no credits.

The defendants filed an answer in which they admitted the execution of the notes, but denied the paragraphs stating the amounts due upon them. They also set up a counterclaim, in substance, that in March, 1922, being indebted to the palintiff on the notes sued upon, and desiring to procure fertilizers for 1922, an agreement was entered into between them and the plaintiff that they would assign to the plaintiff certain notes secured by mortgage of real estate, amounting to $1,500.00, with interest, executed to them by one D. E. Britt; that the plaintiff would credit the notes sued upon with $1,000.00; and for the remaining $500.00, would furnish the defendants with fertilizers of a certain grade and quantity; that the plaintiff collected the full amount of the Britt mortgage debt, refused to properly apply the $1,000.00 to the notes, and refused to furnish the fertilizers as agreed, to their damage $2,500.00 in the making of a crop. The plaintiff replied to the counterclaim denying the same.

The case was tried before his Honor, Judge Featherstone, and a jury, on October 24, 1924, and resulted in a verdict in favor of the plaintiff, as stated in the transcript, "for the sum of approximately $1,700.00," and from the judgment entered upon the verdict, the defendants have appealed.

The exceptions present no assignment of error in the Judge's charge, and none in reference to the admission of evidence except in the matter hereinafter discussed; the single assignment of error in the whole appeal is the admission in evidence of an original summons and complaint in another action, entitled "A. Schafer and S. I. Schafer, Plaintiffs, against D. E. Britt, Defendant," which was an action for the foreclosure of a mortgage given by D. E. Britt to the Schafers, securing along with two other notes,

a note of $500.00, dated May 15, 1921, and payable December 1, 1921, with interest at 8 per cent.

It appears that in 1920 the defendants had become indebted to the plaintiff in the sum of some $2,600 for fertilizers furnished in that year. In May, 1921, renewal notes were executed to take up the balance due upon the notes of 1920; there were three of these notes, two of them were, as stated, for $971.79 and $977.16, due, respectively, September 15 and October 15, 1921; the third was for an amount not stated in the record, but which has been paid as will appear later; the present action is upon the other two.

In February, 1922, the plaintiff was pressing the defendants for payment of the three notes, and on or about the 28th of that month the parties came to an agreement for a temporary and apparently indefinite extension of credit upon the three notes.

At that time the defendants held three notes of $500 each, given to them by one D. E. Britt, dated May 15, 1921, and payable, respectively, December 1, 1921, June 1, 1922, and December 1, 1922 and also notes of one O. W. Jackson, aggregating $900, which they held as collateral security to the Britt notes.

Under the agreement these notes were assigned to the plaintiff. The parties are not in accord as to the terms of the assignment. The plaintiff's contention is that they were simply assigned as collateral with the understanding and agreement that the $500.00 Britt note, then past due, being payable December 1, 1921, should be collected by the defendants, the money paid to the plaintiff, and fertilizer to that amount should be shipped to the defendants; the other two $500.00 notes and the Jackson notes to be held as collateral security to the three notes held by the company against the defendants. The defendants' contention is that the three Britt notes (they say nothing about the Jackson notes) were assigned outright, bought by the plaintiff, under

an agreement to apply the two Britt notes of $500.00 each, not then due, to the three notes of the defendants to the company and to ship them fertilizers for the $500.00 note then past due.

The evidence shows, and I do not understand that it is at all controverted by the defendants, that on April 20, 1922, Messrs. Gibson & Muller, most reputable attorneys, who represented both the plaintiff and the Schafers in their negotiations, instituted an action against Britt to foreclose the mortgage of Britt to the Schafers, so far as the past-due note of $500.00 was concerned. Whether this action was brought in the name of the Southern Cotton Oil Company, or in that of the Schafers, is an issue which the defendants have attempted to inject into the present action, for the reason which will presently appear. Very soon after the institution of this action, early in May, 1922, Gibson & Muller negotiated a loan for Britt, of $1,200.00, which was supplemented by cash from Britt, of $376.00, a total of $1.576.00, which represented the amount of the three Britt notes of $500.00 each. From the proceeds of the loan Gibson & Muller paid to the company, by their check dated May 3, 1922, $1,000.00, and gave the Schafers a receipt for that amount as "payment on notes." At the same time they paid to the Schafers $516.00, which was the balance of the amount due upon the three notes, $1,576.00, less $60.00 due by the Schafers to Gibson & Muller. They testified that the Schafers claimed and were allowed that part of the $1,576.00 which represented the interest upon the three notes under their assertion that they had only assigned to the Company $1,000.00 of the Britt mortgage.

It is inconceivable that the contention of the Schafers to the effect that all three notes had been absolutely assigned to the company be sustained in view of these facts, particularly their acceptance of the collection proceeds of the past-due note, the interest upon all of them, and the acceptance

of a receipt for $1,000.00 as payment on the notes held by the company.

The payment of $1,000.00 to the company was applied first to a smaller note upon which there was due $346.43, paying it in full, and the balance, $653.57, to the note set forth in the first cause of action herein.

In view of their contention that the three Britt notes were absolutely assigned to the company under the agreement above referred to, particularly as to the note upon which the foreclosure proceeding had been brought against Britt, the $500.00 note past due since December 1, 1921, it was exceedingly pertinent for the defendants to show, if they could, that the foreclosure proceeding had been instituted by the Southern Cotton Oil Company, as evidencing their assertion of proprietorship of the note in a very solemn manner. Laboring under that apprehension, with the utmost sincerity we do not doubt, counsel for the defendants served upon counsel for the plaintiff before the trial a notice as follows:

"That you are required to produce on the trial of this case, summons and complaint in the case of Southern Cotton Oil Company, Plaintiff, v. D. E. Britt, Defendant, which was foreclosure of mortgage of D. E. Britt, originally made to the Schafer Company."

In the argument of counsel for the appellants it is stated:

"At the commencement of the trial, and before Schafer was sworn, Joe P. Lane demanded this summons and complaint from Messrs. Gibson & Muller. They stated to him they had no such paper."

I find no record of this demand in the transcript, but, as counsel for the plaintiff concede in their argument that it was as Mr. Lane stated, it will be considered as made.

Counsel for defendants states in his argument:

"Then Schafer swore that Gibson & Muller started a suit of the Southern Cotton Oil Company against D. E. Britt,

for the foreclosure of this mortgage transferred by the Schafers to Southern Cotton Oil Company. (See folios 146, 147, 168 and 175.)"

I do not find that the record for appeal sustains this statement. At the references in the transcript cited by counsel for the defendant, this appears:

"(To the witness S. I. Schafer): Q. Who turned the papers over to Mr. Gibson? A. I could not tell you. I had nothing to do with them.

"Q. You had Mr. Britt over that day to pay that amount? A. Yes, sir; and Mr. Britt had a summons and complaint.

"Q. What did you have to do with collecting it? A. Absolutely nothing at all."

There is nothing in this statement which shows that the plaintiff had brought the suit. The most that can be inferred from it is that an action had been instituted against Britt without the authority of the Schafers, either in their names or in that of the plaintiff. Again:

"Q. Mr. Schafer, what was that you said about a summons and complaint in the case of Southern Cotton Oil Company v. Britt? [As a matter of fact, he had not mentioned the name of the company.] A. When I went in there some time in April on some other matters, Mr. Gibson told me he had served a summons and complaint on Dunk Britt. He showed it to me and I saw on the back where Miss Lacy Jackson served the papers. [It is remarkable that, if the title of the case was so important in sustaining his contention, he observed only the back of the paper which did not disclose the title.] * * * He said there would not be any costs because Miss Jackson served it. [Why should Schafer be interested in the costs if the Southern Cotton Oil Company's name appeared as plaintiff in the action?]"

These are the only two references to the matter that I have found in the record, and I do not think they amount

even to a scintilla of evidence that the action was instituted by the Southern Cotton Oil Company.

But assuming for the argument's sake that Schafer had testified positively to the fact, after counsel for the plaintiff had declined to produce the document described in the notice, there are several very good reasons why the very salutary rule announced in the *Powell v. Pearlstine case,* 43 S. C., 403; 21 S. E., 328, is not applicable to the facts in the case at bar.

In that case the plaintiff relied upon the alleged fraudulent alteration of a mortgage, in that, after its execution and delivery, the mortgagee or his assignee had surreptitiously inserted into the mortgage the description of an additional tract of land. In the action instituted by the mortgagor to enjoin the foreclosure of the altered mortgage, the plaintiff gave notice requiring the production of the original document. At the trial demand was made for it, and the record shows that "the same was not produced, nor was any excuse given for the failure to produce the same." The plaintiff then introduced secondary evidence of its contents, together with testimony to establish the allegations of the complaint, which the Circuit Judge found, as a matter of fact, was sufficient to establish the fraudulent alteration of the mortgage" (which hardly could be said of the testimony in the case at bar). The defendant then offered evidence controverting the secondary evidence offered by the plaintiff, and also offered in evidence the original mortgage which was being attacked. The Court held that he could do neither, for the very satisfactory reason given by the Court:

"If a party, who, upon notice, refuses to produce a paper which is in his possession, and thereby forces his adversary to resort to secondary evidence of the contents of such paper, should be permitted afterwards to introduce the paper as a part of his own evidence, he would thus be af-

forded the opportunity of taking the chances whether the secondary evidence offered by his adversary should prove to be satisfactory or unsatisfactory to him. If the latter, then he would have the opportunity of correcting it by producing the paper itself, which, of course, would be the highest evidence of its contents; but if the former, then he could, by omitting to offer the paper in evidence, suppress the best evidence of the facts in issue; and this no Court, charged with the administration of justice, could, for a moment, countenance."

The very proper basis of this decision was the designed concealment of the original paper, which had been properly described, and the unwarranted position which the defendant assumed of lying back to take advantage of the plaintiff's testimony. That feature has no parallel in this case. Counsel declined to produce the papers called for by the defendants for the very good reason stated that there were no such papers, and notified counsel for the defendants before their witness Schafer was put upon the stand, that Schafer had requested plaintiff to bring the suit against Britt in its name, which request was declined.

It will be noticed that the papers called for by counsel for the defendants were most particularly described, and were intended to establish a theory entertained by him, that the suit had been instituted by the Southern Cotton Oil Company, for the manifest purpose of establishing evidence of proprietorship of the note in the company. The papers in the possession of counsel for the plaintiff showed an entirely different situation; that the suit had been instituted by the Schafers themselves, presumably by the attorneys with their authority. Counsel for the plaintiff could have had no improper purpose in declining to produce such papers, for their production would have completely annihilated the theory of the defendants.

There can be no objection to the law as laid down in

22 C. J., 1063. The rule simply relieves the party from the obligation of describing the document desired with perfect accuracy. He must show that the document required actually existed and was in the possession of the adverse party (22 C. J., 1067), and, having done this, he will not be held to a strictly accurate description of it. The defendants called for a document that never existed; the document that did exist was certainly not one which they desired or required, as its effect would have been to absolutely destroy their theory.

Another reason for sustaining the introduction of the summons and complaint is thus expressed in 22 C. J., 1064:

"The sufficiency of a notice to produce a written instrument is a preliminary question of fact for the trial Court, whose determination will generally not be disturbed on appeal, except in a plain instance of injury through an improper exercise of discretion."

I think that an absolutely conclusive ground for sustaining the admission of the original summons and complaint in the case of the Schafers against Britt is found in the principle that, where the document sought to be introduced bears upon a collateral issue, notice to produce it is not required, and secondary evidence may be admitted. What the defendants sought to establish was the absolute assignment of the Britt notes and mortgage. As an item of evidence to establish that contention, they sought to prove that the Southern Cotton Oil Company had exercised ownership of the Britt mortgage by instituting an action to foreclose it. If true, that presented only an inference leading to the proof of their contention. There was nothing in the summons and complaint upon which their defense was based; it was only the collateral fact of instituting the suit. The defendants could, therefore, have proved this fact without requiring the production of the original papers; and, if so, the plaintiff had the right to controvert such

evidence by secondary evidence on their part and by the conclusive evidence afforded by the papers themselves.

"Parol evidence of the contents of a deed in the possession of the opposite party is inadmissible without notice to produce the original. Where, however, the deed relates to collateral circumstances, and an inference is deducible from the existence and execution of the deed, and not from its contents, parol evidence is admissible without such notice." *Gist v. McJunkin,* 2 Rich., 154.

"It is not necessary to give previous notice to the other side to produce a writing on a collateral matter, in order to introduce secondary evidence of its contents." *Hampton v. Ray,* 52 S. C., 74; 29 S. E., 537.

"As the contract involved merely a collateral question, parol testimony of its contents was admissible." *Elrod ·v. Cochran,* 59 S. C., 467; 38 S. E., 122.

" * * * Parol evidence of the contents of a paper in the possession of the adverse party, which constitutes the evidence of the rights pleaded, cannot be given except after reasonable notice to produce; the exceptions being that no notice is necessary when the paper called for is in Court, or when the paper relates to a collateral circumstance and not to the main issue in the case." *Worth v. Norton,* 60 S. C., 293; 38 S. E., 605.

"The general rule that parol evidence of the contents of a paper writing, which the party has in his possession, or which he may procure to be produced, by the process of the Court, cannot be given in evidence, holds universally, wherever it constitutes the evidence of his right to the thing for which he sues [that is, I interpolate, the basis of his right]; and that because it is the most certain, and, therefore, the best. But where the writing relates to a collateral circumstance, and an inference favorable to the party arises out of the fact of its execution and existence, and not out

of its particular contents, parol evidence is admissible."
*Nauful v. Bank,* 111 S. C., 309; 97 S. E., 843.

The above quotation from the *Nauful case* is taken bodily from the case of *Lowry v. Pinson,* 2 Bailey, 324; 23 Am. Dec., 140, one of the most frequently cited cases in our reports. There the plaintiff alleged that the debtor had conveyed the land in dispute to the defendant for the purpose of defrauding her. He offered parol evidence that the debtor had about the same time made a deed of gift of all his other property to the defendant and another. The Court said that the object of the testimony "was to show the fraudulent intention by way of deduction, not from the particular provisions of the bill of sale, but from the fact of its execution without consideration. The evidence was, therefore, properly admitted."

See, also, *Sims v. Jones,* 43 S. C., 91; 20 S. E., 905. *State v. Waldrop,* 73 S. C., 60; 52 S. E., 793. *Spiers v. Willison,* 4 Cranch, 398; 2 L. Ed., 659.

And so it appears to me that the object of testimony, tending to show that the Southern Cotton Oil Company had instituted a suit for the foreclosure of the Britt mortgage, was to show by way of deduction, not from the particular contents of the summons and complaint, but from the fact of the institution of such an action, that the Southern Cotton Oil Company had exercised acts of absolute ownership of the Britt mortgage, a fact to which the institution of the action was entirely collateral.

It seems clear to me, therefore, that the fact, if it had been a fact, that the Southern Cotton Oil Company had instituted an action to foreclose the Britt mortgage constituted only a fact from which the ownership of the Britt mortgage might have been inferred, was collateral to the main issue in the case, and could have been established by parol; that a notice to produce was entirely superfluous. If so, the plaintiff was entitled to offer parol evidence in contravention of the defendant's parol evidence, and also to in-

troduce the original papers. Besides, it was largely within the discretion of the Court to determine the question of collateralness.

As Mr. Wigmore says, in Volume 2, Section 1253, of his first edition on Evidence:

"But in any case the misfortune of inconsistent precedents and the disadvantage of an obscure definition can be obviated by applying strictly that salutary doctrine of judicial discretion. Let the trial Judge determine absolutely and without review, the application of the principle to each case. Whether a document is 'collateral' is practically a question whether it is important enough, under all the circumstances, to need production; and the Judge presiding over the trial is fitted to determine this question finally."

The Court must recognize the fact, too, that even if there was any technical error in the admission of the evidence, which I do not concede, the jury has found the facts against the defendants upon every issue, and from the facts above detailed there cannot be a doubt but that the justice of the case is reflected in the verdict.

A notice to produce a document at the trial serves only the purpose of enabling the party who gives the notice to offer secondary evidence of its contents, upon the failure of the party notified to produce the document at the trial. He has no rights before the trial to an inspection of the paper under such a notice. He may exercise the right of inspection under Section 689 of the Code, but not under the notice to produce.

For these reasons, I think that the judgment of the Circuit Court should be affirmed.